IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KONJIT FANTAYE,

        *Plaintiff*,

    v.

MARCO RUBIO, Secretary of State, UNITED STATES DEPARTMENT OF STATE, an Agency of the United States of America, KRISTI NOEM, Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, an Agency of the United States of America, PAMELA BONDI, Attorney General of the United States

        *Defendants*.

Civil Action No.:

Plaintiff Konjit Fantaye ("Plaintiff"), by and through undersigned counsel, complains of the Defendants Secretary Marco Rubio, Secretary Kristi Noem, and Attorney General Pamela Bondi ("Defendants"), as follows:

### INTRODUCTION

1.    This is a civil action brought under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06 by Ms. Fantaye to compel Defendants to correctly apply the law.

2.    Ms. Fantaye is United States citizen who filed a petition under the Immigration and Nationality Act to be reunited with her non-citizen son almost seven years ago. Because of a legally erroneous application of the law by the agency, Ms. Fantaye faces future delay in her reunification with her son.

3.    Ms. Fantaye has Stage III breast cancer. Because of her treatment and the unstable political situation in her native Ethiopia, she has only been able to make one brief visit to see her

son. Her only chance of reunification is if he comes to the United States. She desperately wishes to be reunited with her son during this difficult period of her life.

4. This is Ms. Fantaye's second complaint on this issue. *See Fantaye v. Blinken*, 24-cv-03125 (E.D. Pa. July 17, 2024). Since the Court dismissed that complaint without prejudice, the visa interview has been scheduled for October 29, 2025.

## JURISDICTION AND VENUE

5. Subject-matter jurisdiction over this action is provided by 28 U.S.C. § 1331 (federal question statute) and 28 U.S.C. § 2201 (Declaratory Judgment Act). This Court has further jurisdiction over the instant matter pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 et seq.

6. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 in that Ms. Fantaye lives in the Eastern District of Pennsylvania.

7. No exhaustion requirements apply to Ms. Fantaye's complaint, although she has brought the legal error to the attention of the agency.

## PARTIES

8. Plaintiff Konjit Fantaye is a U.S. citizen living in Upper Darby, Pennsylvania. She is originally from Ethiopia and her son continues to reside there. She immigrated to the United States from Ethiopia in 2016, applied for naturalization, and became a U.S. citizen in 2024.

9. Defendant Marco Rubio is the Secretary of State of the United States. In that capacity, he directs the National Visa Center, a federal agency based in Portsmouth, NH which made the initial erroneous classification of the visa application described below. Mr. Rubio also controls the consular officers who will make the ultimate determination of the visa classification per the Foreign Affairs Manual, which is produced by the Department of State. He is sued in his official capacity.

10. Defendant United States Department of State is the agency responsible for the granting and denying of immigrant visas, 8 U.S.C. § 1104, and of which the National Visa Center and U.S. consulates are a part. Officers of the Department of State produce the Foreign Affairs Manual, which is a binding authority on consular visa operations.

11. Defendant Kristi Noem is the Secretary of Homeland Security of the United States. In that capacity, she oversees United States Citizenship and Immigration Services, which makes the initial visa category determination and, pursuant to a Memorandum of Understanding with the U.S. Department of State, has final responsibility over visa guidance concerning classification for immigrant visas. She is sued in her official capacity.

12. Defendant Department of Homeland Security is responsible for providing guidance to consular offices in issuing visas and in approving or denying I-130 petitions, of which the United States Citizenship and Immigration Services is a part.

13. Defendant Pamela Bondi is the Attorney General of the United States, and in that capacity she administers the Executive Office of Immigration Review which includes the Board of Immigration Appeals. By statute, she has final authority over interpretation of the Immigration and Naturalization Act. *See* 8 U.S.C. § 1103(a)(1). She is sued in her official capacity.

## THE VISA PROCESS

14. United States citizens and Lawful Permanent Residents ("LPRs," also known as "green card holders") may apply for a vias allowing certain family members to join them in the United States. This process begins with the U.S. citizen or LPR filing an I-130 Petition. *See* 8 U.S.C. § 1154. The U.S. citizen or LPR is the "petitioner" and the relative is the "beneficiary" of the petition. *Id.* The beneficiary will also be the applicant for an immigrant visa.

15. The I-130 petition is adjudicated by the United States Citizenship and Immigration Services ("USCIS"), part of the Department of Homeland Security ("DHS"), which approves it if

the petitioner has shown that the asserted familial relationship exists. *Id.* USCIS then sends approved I-130 petitions to the State Department's National Visa Center ("NVC") for processing. *See* 8 U.S.C. § 1202; 8 C.F.R. § 204.1(a); § 204.2(d). While the Department of State has primary responsibility for the adjudication of visa applications, both the Department of Homeland Security and the Attorney General play a role. *See* Exh. G, *Memorandum Of Understanding Between The Secretaries Of State And Homeland Security Concerning Implementation Of Section 428 Of The Homeland Security Act Of 2002* (Sept. 28, 2003)[1]. Under the Homeland Security Act of 2002, DHS establishes visa policies and holds final responsibility for providing guidance to consular offices regarding visa eligibility. *Id.* at 1; 6 U.S.C. § 236. DHS has authority over immigrant visa eligibility guidance, which includes classification of visas such as those impacted by the Child Status Protection Act. *Id.*

16.   By statute, a "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1). That authority may be exercised through decisions of the Board of Immigration Appeals. *See* 8 U.S.C. § 1103(1)(g)(1).

17.   Once the NVC receives the approved I-130 petition from USCIS, the NVC collects forms, supporting documents, and fees from the beneficiary before sending the application to a U.S. consulate for the final stage of the visa application process, which includes an interview with a consular officer. Depending on the status of the petitioner (U.S. citizen or LPR), the age of the beneficiary, and the relationship between petitioner and beneficiary, the wait times for a visa vary dramatically. That is because some categories of relationships are subject to an annual statutory visa cap. *See* 8 U.S.C. § 1151(c); § 1153(a). When the cap is met, the beneficiary joins a line and

---

[1] *Also available at* https://law.yale.edu/sites/default/files/area/conference/ilroundtable/ADOS_DHS_MOU_re_HSA.pdf

must often wait years until a visa is available. These categories include children of LPRs, adult children of U.S. citizens, and brothers and sister of U.S. citizens.

18.     These categories are known as "family preference" categories. For purposes of immigration law, children are those who are under twenty-one (21) years of age, and adult offspring are referred to as "sons or daughters" in the statute. *See* 8 U.S.C. § 1101(b)(1). Unmarried sons and daughters of U.S. citizens are in the "F1" preference category. *Id.* Married sons and daughters of U.S. citizens are in the "F3" category. *Id.* Children (under 21) of LPRs are in the "F2A" category. *Id.* Sons and daughters of LPRs are in the "F2B" category. *Id.*

19.     An applicant's place in the visa "line" can be tracked by comparing an applicant's "priority date" with a published "Final Action Date." The priority date for family preference categories corresponds to when the I-130 petition was properly filed with USCIS. 22 C.F.R. § 42.53. Once a priority date is "current," or before the Final Action Date, a visa should be available. If the priority date is not current and no visa is available, the application process is paused and a consular interview, a necessary final step in the process, cannot be scheduled. *See* 22 C.F.R. § 42.62); 9 FAM 503.4-3, *see also* Immigrant Visa Process, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-8-scan-collected-documents/step-9-upload-and-submit-scanned-documents.html (last visited June 15, 2025).

20.     The State Department updates the Final Action Date, and thus which priority dates are currently eligible to receive a visa, every month in the "Visa Bulletin." *See* The Visa Bulletin, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html. This gives an approximation of the wait. For example, adult sons or daughters of a U.S. citizen with a priority date in November 2016 are only now (October 2025) eligible to receive a visa. *See* Visa Bulletin

for October 2025, U.S. State Dept, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2025/visa-bulletin-for-october-2025.html. For brothers and sisters of U.S. citizens, the gap is 17 years, with petitions filed in January 2008 now having an available visa.[2] *Id.*

21. The visa bulletin contains two sections, A and B. Section A lists the Final Action Dates indicating when a visa is available. Section B lists "Dates for Filing Applications", which "reflect a timeframe justifying immediate action in the application process."[3] 9 FAM 503.4-3(A)(3). These dates indicate when the NVC or the consulate should contact an applicant to start submitting documents. On information and belief, it represents a projection by the State Department of what the "Final Action Date" will be in eight to ten months.[4]

22. Some relationships are not subject to a visa cap, and so those visas can be processed immediately. *See* 8 U.S.C. § 1151(b). This category is known as "immediate relatives." 8 U.S.C. § 1151(b)(2). They include the under-21 children, spouses, and parents of U.S. citizens. *See id*.

23. Applicants with an available visa, and who have submitted all required documents, will be scheduled for an in-person interview at the embassy or consulate in their home country. 8 U.S.C. § 1154. The consular officer then approves or denies the visa application. *Id.* If approved, the beneficiary is issued an immigrant visa allowing them to come to the United States where, subject to a final screening on entry, they will be admitted in lawful permanent resident status and receive their green cards. *See* 8 U.S.C. §§ 1101(a)(16), (20); 8 C.F.R. § 211.1.

---

[2] Visas for certain "oversubscribed" countries are subject to additional numerical limitations. 8 U.S.C. § 1152(e). The countries currently subject to this provision are China, India, Mexico and the Philippines, and thus section 1152(e) is not applicable here. *See* Visa Bulletin for July 2024, U.S. State Dept, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2025/visa-bulletin-for-november-2024.html  (last updated October 3, 2024).
[3] Visa Bulletin for July 2025, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2025/visa-bulletin-for-july-2025.html
[4] Counsel was able to confer by email with an almost 50-year State Department veteran who ran the office that tracks visa allocations and updates the visa bulletin.

## THE CHILD STATUS PROTECTION ACT

24. When a parent petitions for their child, as described above, the child can fall into one of five categories of beneficiary, each with distinct waiting times for visa availability.

25. As discussed above, children under 21 of U.S. citizens are "immediate relatives" and there is no cap on visas, and thus no wait. Unmarried sons and daughters of U.S. citizens (F1 Category) filing petitions now have a current approximate wait time of about nine years. *See* Visa Bulletin, June 2025. Married sons and daughters of U.S. citizens (F3 category) have a wait time of about fourteen years. *Id.* Children of LPRs (F2A category) have a current wait time of about three years. *Id.* Unmarried sons and daughters of LPRs (F2B category) have a current wait time of about eight years. *Id.*

26. Because of the long wait times, both during the adjudication of the family petition by the Department of Homeland Security, and then the wait for when a visa become available, children can "age out" of a category between the time of the filing of a petition and the time when a visa becomes available. The child would then have to change categories, likely waiting even longer. Depending on wait times of both adjudication by USCIS and demand for a particular category of visa during the visa process, families would find themselves pushed back into less advantageous categories and facing even longer delays in reuniting with their children.

27. To address this, Congress passed the Child Status Protection Act ("CSPA") in 2002, Public Law 107-208, 116 Stat. 927 (2002). Broadly speaking, the CSPA creates a statutory age, distinct from a beneficiary's biological age. First, the age of a child for purposes of the family preference categories is calculated by looking at the child's age when a visa becomes available, and then subtracting the number of days that the I-130 petition was pending before USCIS before

being approved. *See* 8 U.S.C. § 1153(h)(1). This prevents "age out" due entirely to slow processing times at USCIS.  8 U.S.C. § 1153(b)(5).

28. Second, the Act protects visa applications adversely impacted if the parent petitioner naturalizes during the time the visa petition is pending. *See* 8 U.S.C. § 1154(k)(2). If an LPR parent naturalizes, then normally their (over 21) son or daughter's petition would be converted from the F2B category (sons and daughters of LPRs) to the F1 category (sons and daughters of U.S. citizens). *See* § 1154(k)(1). Because the wait times vary between these groups, son and daughter beneficiaries can opt-out of this conversion where the F1 category has a longer wait than the F2B. *See* § 1154(k)(2).

29. As explained in greater detail below, the Act also allows the children of LPR's who naturalize to be recategorized as immediate relatives.

30. In practice, the CSPA protects families from being penalized for the children growing up during the pendency of family petitions (something they cannot control), or for the naturalization of their parents (something U.S. law seeks to encourage).[5]

## THE FOREIGN AFFAIRS MANUAL

31. The Foreign Affairs Manual ("FAM") is the authoritative rulebook governing the actions of Department of State officials. The Supreme Court has cited to the FAM to explain the

---

[5] *See also* USCIS POLICY MANUAL, VOLUME 7 PART A CHAPTER 7- CHILD PROTECTION STATUS ACT (2024). "The core purpose of the Child Status Protection Act (CSPA) was to alleviate the hardships faced by certain noncitizens who were previously classified as children for immigrant visa purposes, but who, due to the time required to adjudicate petitions, had turned 21 years old and consequently became ineligible to receive such immigrant visas."; IMMIGRANT LEGAL RESOURCE CENTER, "CSPA and Children of Permanent Residents and Other Derivative Beneficiaries,"
https://www.ilrc.org/sites/default/files/resources/cspa_children_of_lpr_other_deriv_bene-20180629.pdf (May 2018) (providing an overview of the CSPA and visa petitions).

official policy of the U.S. government binding State Department officials. *See, e.g., Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2104-2108 (2015) (explaining that the State Department, through the FAM, "instructs its employees [on how to record a place of birth]" and describing the FAM as "permit[ing]" one action, but had "long prohibited" another); *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 367–68 (2006) (Breyer, J., dissenting) (quoting FAM to describe the functions of a consular officer). The Secretary of State has described the FAM as "administrative guidelines" in briefing to the Supreme Court. *Vance v. Terrazas*, 444 U.S. 252, 262 n.6 (1980). The online version of the FAM hosted on the State Department's website describes it and its companion, the Foreign Affairs Handbook, as "a single, comprehensive, and authoritative source for the Department's organization structures, policies and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies." Foreign Affairs Manual, https://fam.state.gov/ (last visited October 18, 2025).

32. Chapter 9 of the FAM "deals exclusively with the adjudication of U.S. visas, both nonimmigrant and immigrant, providing consular officers with the guidance needed to make informed decisions based on U.S. immigration law and regulations." 9 FAM 101.1-1. Section 502 of Chapter 9 deals with immigrant visa classifications, describing preference categories, and conversions from one category to another. It describes the scenario at issue here: "[f]or petitions filed for a beneficiary as the child of an LPR… where the petitioner has naturalized, petition conversion is determined by considering the beneficiary's age at the time of naturalization." 9 FAM 502.1-1(D)(7).

33. However, as discussed in more detail below, the FAM dictates the incorrect outcome: "[i]f the F2A beneficiary's true age was over 21 on the date the petitioner naturalized, then the petition will automatically convert to the first family preference category (F1)." *Id.*

Finally, the FAM does contain a carve out: "[b]ecause of two appellate court decisions . . . there is an exception for cases in which the petitioner resided in a jurisdiction in the Second or Ninth Circuit at the time of naturalization or at the time of immigrant visa processing." *Id.* (citing *Tovar v. Sessions*, 882 F.3d 895 (9th Cir. 2018) and *Cuthill v. Blinken*, 990 F.3d 272 (2d Cir. 2021)).[6] The final paragraphs describe the territorial jurisdiction of the Second and Ninth Circuits and instruct consular officers to apply the CSPA where the petitioners reside in those jurisdictions "using the date of the petitioner's naturalization as the date a visa became available, and then use the CSPA age to determine to which category the petition will convert." *Id.*

34. The FAM reflects a legal determination by the Board of Immigration Appeals ("BIA"). The BIA, the administrative appeals body at the Department of Justice, has final interpretive say on questions of immigration law, absent contrary direction from an Article III Court. *See* 8 U.S.C. § 1103(a)(1). In *Matter of Zamora-Molina*, the BIA faced essentially the same question as here, albeit in the context of an "adjustment of status" application under 8 U.S.C. §1255 and not a visa application. 25 I&N Dec. 606 (BIA 2011). The BIA held that the beneficiary's biological age, and not the CSPA statutory age, controlled whether his category was converted to the immediate relative category. *Id.* at 612. It is not clear if the FAM rule at 502.1-1(D)(7) was drafted in response to *Zamora-Molina*,[7] but they are in accordance, and both incorrect.[8]

---

[6] As of October 18, 2025, the FAM had not been updated to reflect that the First Circuit has joined the Second and Ninth in disagreeing with the FAM's interpretation. *See* 9 FAM 502.1-1(D)(7); *see also Teles de Menezes v. Rubio*, No. 24-1253, 2025 WL 2673181 (1st Cir. Sept. 18, 2025).

[7] The Department of State does publish archived versions of Chapter 9 of the FAM at https://fam.state.gov/Volumes/Archive/09FAM, but they only date back to 2015, and many of the links are inoperable. Regardless, *Zamora-Molina* is from 2011.

[8] To the extent that the BIA relies on 8 C.F.R. § 204.2(i)(3), *see Zamora-Molina*, 25 I&N at 612, the regulation, which was never updated after passage of the CSPA, is likewise *ultra vires*.

## FACTUAL ALLEGATIONS

35. Ms. Konjit Adebe Fantaye was born in Ethiopia in 1980.

36. On September 9, 2002, Ms. Fantaye married Tadele Tafera. Ms. Fantaye gave birth to her and Mr. Tafera's son, Henok Tadele Tafera (the "Beneficiary") on January 17, 2003, in Addis Ababa, Ethiopia. Ms. Fantaye and Mr. Tafera divorced on October 7, 2008, and split custody of the Beneficiary.

37. Ms. Fantaye married her second husband, Sirak Afework, a U.S. citizen, on January 21, 2010. Mr. Afework then filed an I-130 petition (USCIS Receipt # EAC1490303204) on behalf of Ms. Fantaye on May 2, 2014, which was approved on December 17, 2014.[9] Mr. Afework listed the Beneficiary as his stepson and the son of Ms. Fantaye in that application. As the spouse of a U.S. citizen, Ms. Fantaye was an "immediate relative" and so a visa was immediately available.

38. Approved petition in hand, Ms. Fantaye then submitted an immigrant visa application. Ms. Fantaye was assisted by prior counsel hired by her husband, who prepared the application in the United States while Ms. Fantaye was in Ethiopia. In that application, Ms. Fantaye's prior counsel erroneously answered "no" to the question of, "Do you have any children?" and therefore, failed to claim the Beneficiary as her biological son. This mistake was not material to Ms. Fantaye's visa application and she was scheduled for a consular interview. At the interview, Ms. Fantaye recalls correcting the error and informing the consular officer that she did have a son.

39. Ms. Fantaye's visa application was granted on June 30, 2016, and she was admitted to the United States on July 16, 2016, as a lawful permanent resident.

---

[9] This matter involves two family petitions and visa applications. First, Plaintiff Fantaye immigrated to the U.S. on a petition filed by her U.S. Citizen spouse. Ms. Fantaye later filed a family petition for her son. The second petition and visa application is at issue in this litigation.

40.      On November 21, 2018, Ms. Fantaye filed an I-130 petition (USCIS Receipt # WAC1990063948) on behalf of her son, the Beneficiary. She filed the I-130 *pro se* and erroneously listed the Beneficiary's date of birth as September 5, 1995—his correct date of birth in the Ethiopian Ge'ez calendar—and accordingly, USCIS treated the petition as that of an LPR petitioning for an adult child. Ms. Fantaye then retained counsel at the Nationalities Service Center, who corrected the error on July 15, 2021.

41.      USCIS then issued a "Notice of Intent to Deny" the I-130 petition on August 12, 2021, due to Ms. Fantaye's failure to list her son on her visa application in 2014 and requesting additional birth records. Ms. Fantaye responded, providing the properly issued birth certificate, as well as a hospital-issued birth certificate, on November 8, 2021.

42.      Despite this, USCIS denied the I-130 on December 1, 2021, finding that the second birth certificate was "late-registered" and therefore that it did not prove the parent-child relationship between Ms. Fantaye and the Beneficiary.

43.      Ms. Fantaye, through the assistance of counsel, appealed that decision to the Board of Immigration Appeals ("BIA"), arguing that USCIS erred by ignoring the three birth certificates and one baptismal certificate that had been submitted to establish the parent-child relationship and that the USCIS decision ignored governmental record keeping practices in Ethiopia. The notice of appeal was received by the BIA on December 28, 2021, and the briefing and evidence on appeal was received by the BIA on January 12, 2022.

44.      Counsel for the Department of Homeland Security, representing USCIS in the BIA appeal, filed a notice in July 2022 agreeing that the matter should be remanded to USCIS. The BIA granted the appeal and remanded the petition back to USCIS on February 7, 2023.

45. Despite the remand, USCIS then requested DNA evidence to prove the parent-child relationship on July 27, 2023. Ms. Fantaye and the Beneficiary completed DNA testing which proved paternity, and the I-130 was finally approved on January 25, 2024. *See* Exh. A (I-130 Approval). The petition had been pending for five and a half years.

46. The Beneficiary turned 21 on January 17, 2024, days before the petition was finally approved. However, applying the Child Status Protection Act (CSPA), USCIS correctly subtracted the time the I-130 petition had pended, locking the Beneficiary's statutory age at 15 years old at the time the visa became available. This was evident from the I-130 approval notice which categorized the beneficiary as an "unmarried child under 21 of permanent resident, 203(a)(2)(A) INA." Exh. A. This is also known as the F2A category.

47. Ms. Fantaye filed *pro se* for naturalization and became a U.S. citizen on February 13, 2024.

48. The National Visa Center created a consular processing case for the Beneficiary on May 7, 2024, indicating that a visa was available to him. *See* Exh. B. Counsel notified the NVC that Ms. Fantaye was now a U.S. citizen and requested the petition be upgraded to that of an immediate relative on May 24, 2024. *See* Exh. C.

49. The NVC replied on May 28, 2024, notifying counsel that the Beneficiary was now an F1 visa applicant, a son or daughter over 21 of a U.S. citizen, and that a visa was no longer available to him. *See* Exh. D. Counsel filed an inquiry that same day with the NVC, asking why the Beneficiary was categorized as an F1 relative instead of an immediate relative; she never received a response. *See* Exh. E.

50. On July 17, 2024, Ms. Fantaye filed her initial complaint with this Court, which was assigned case number 24-cv-03125, and the summons promptly issued. *Fantaye v. Blinken*, 24-cv-03125 (E.D. Pa. July 17, 2024) ("*Fantaye I*").

51. On August 28, 2024 the NVC changed the classification of the Beneficiary to IR2, unmarried child of a U.S. citizen, temporarily offering the relief Ms. Fantaye had requested in her first complaint, and allowing Ms. Fantaye and her son to proceed with paying fees and submitting documents. Exh. F. Unfortunately, this change of course by the defendant after the initiation of litigation did not solve Ms. Fantaye's problem nor moot her claim. As discussed above, the FAM will require the consular officer who makes the final determination to categorize this application as F1. 9 FAM 502.1-1(D)(7). The notice from the NVC confirmed this, stating that "After [the Beneficiary] executes a visa application and is interviewed by a consular officer, the consular officer will determine the correct visa application and adjudicate the visa application as per 22 CFR 42.81." Exh. F. Thus, the NVC's preliminary determination does not control the outcome here or provide the legal relief sought.

52. This Court dismissed Ms. Fantaye's First Amended Complaint without prejudice on June 2, 2025. *Fantaye I*, ECF Doc. 34. This Court found that Ms. Fantaye had not alleged facts sufficient to establish Article III standing. In so finding, this Court determined that Ms. Fantaye established that Defendants are certain to re-categorize her son as an F1 immigrant, as they are bound to do by the Foreign Affairs Manual. *Id.* at 6. However, this Court determined that Ms. Fantaye had not established that this re-categorization would injure her, as it was possible that the F1 visa category could be current by the time Ms. Fantaye's son receives an interview, in which case the category would be immaterial. *Id.* at 7. The Court further determined that Ms. Fantaye had not established that her financial injury alleged was redressable by the relief sought. *Id.* at 8.

The Court then reaffirmed this decision in denying Ms. Fantaye's Motion for Leave to File A Second Amended Complaint. *Fantaye I*, ECF No. 45, at 4.

53. Ms. Fantaye renewed a previously denied request for the application to be expedited. The second request was granted. Mr. Tefera's interview is now scheduled with the Addis Ababa consulate on October, 29, 2025. At that interview, a consular officer, bound by the dictate of the Foreign Affairs Manual, will recategorize Mr. Tefera as the F1 category, and deny his visa application. He will again face an indeterminate delay.

**STANDING**

54. Ms. Fantaye's injury is certainly impending. *See* Clapper *v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). His priority date is November 21, 2018. Exh. A. The Final Action Date for the F1 category is currently November 8, 2016.[10] Mr. Tefera's consular interview is scheduled for October 29, 2025. Exh. I.

55. Mr. Tefera's interview on October 29, 2025 will occur before the F1 visa category is current, which based on the dates above, will take approximately two more years. When he is interviewed, he will be re-categorized by a consular officer, *See Fantaye I*, Memorandum Opinion, ECF Doc. 34 at 6. The visa will be denied, and when the priority date is finally current, he will likely need to re-submit certain documents that expire, such as police clearances and medical reports, to again be documentarily qualified. He will therefore face significant additional delay causing cognizable injury to Ms. Fantaye. *Id.*

56. Ms. Fantaye will also face financial injury from this delay. Ms. Fantaye paid $455 to the NVC in order to complete the application and schedule an interview, *See* Exh. H (Declaration

---

[10] Visa Bulletin for October 2025, U.S. State Dept, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2025/visa-bulletin-for-october-2025.html.

of Kathryn Smith). When Mr. Tefera is reclassified, it is likely that she will have to pay those fees again in order to schedule a new interview. *Id*. While she will not be able to sue for monetary damages under the APA in the future, equitable relief now, that prevents the need for a second interview and submission of fees, redresses this likely future injury.

## COUNT ONE

### Administrative Procedure Act: Not in Accordance with Law

57. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

58. Pursuant to the Administrative Procedure Act ("APA"), courts may "hold unlawful and set aside agency action, findings, and conclusions" the court finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Defendants' interpretation of the term "age" as set forth in Foreign Affairs Manual contravenes the CSPA and is "not in accordance with law." *Id.*

59. The question here involves a pure question of law and statutory interpretation. The doctrine of consular nonreviewability, which largely insulates factual and discretionary decisions by the State Department from judicial review, is not applicable here since Ms. Fantaye does not complain of any factual or discretionary determination. *See Dep't of State v. Muñoz*, 144 S. Ct. 1812, 1820 (2024). Rather, whether an agency determination is arbitrary and capricious is "a legal issue amenable to summary disposition." *Schwebel v. Crandall*, 343 F. Supp. 3d 322, 327 (S.D. N.Y. 2018) (quoting *Noroozi v. Napolizano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012)); *see also Christ the King Manor, Inc. v. Sec. U.S. Dep't of Health and Hum. Serv.*, 730 F.3d 291, 305 (3d Cir. 2013) (explaining the "arbitrary and capricious" inquiry under the APA). The Supreme Court has previously reviewed agency interpretations and applications of the CSPA, in an APA case

brought by parent-petitioners seeking to bring their children to the United States. *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 55–56 (2014).

60. Courts may review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Here the agency, without notice and comment, has created binding rules its officers must follow that misapply the law, with an exception for cases originating in the jurisdiction of the two Circuit Courts that have held that the agency's position is incorrect. 9 FAM 502.1-1(D)(7). *See Abbott Lab'ys v. Gardner*, 387 U.S. 136, 153 (1967) (holding that "pre-enforcement judicial review" is appropriate where a purely legal issue is presented and is "fit for judicial resolution" and where a regulation is undoubtedly directed at a plaintiff).

61. The preference category determination by the State Department, as established by the BIA in *Matter of Zamora Molina* and reflected in the FAM, is both the "consummation of the agency's decision-making process" and is an action "by which rights or obligations have been determined or from which legal consequences will flow." *Cuthill v. Pompeo*, Case No. 3:18-cv-1679, 2019 WL 13272516, at *6 (D. Conn. July 25, 2019), *aff'd sub nom Cuthill v. Blinken*, 990 F.3d 272 (2d Cir. 2021) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997) (internal quotation marks omitted)). Ms. Fantaye has no other adequate remedy in a court "because judicial review of the final decision over whether a visa should issue is not only unavailable, but would address a fundamentally different question, perhaps many years in the future." *Id.* at *7 (citing *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009)).

62. Defendants' initial designation of the Beneficiary as an F1 adult child of a U.S. citizen, rather than as an immediate relative minor child of a U.S. citizen is arbitrary, capricious, and contrary to law; the mandated reclassification to F1 pursuant to the FAM suffers the same defect.

63. The relevant section of the CSPA provides that "In the case of a petition, if the petition is later converted, due to the naturalization of the parent, to a petition to classify the alien as an immediate relative under subsection (b)(2)(A)(i), the determination shall be made using the age of the alien on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2).

64. The FAM instructs State Department officials to use the Beneficiary's biological age, rather than his protected statutory age under the CSPA, in making this calculation. 9 FAM 502.1-1(D)(7). The Beneficiary's statutory age, which excludes processing time, is 15 years old, meaning he is an immediate relative and there would be no wait for a visa.

65. Three Courts of Appeal have confronted this same issue, and all have ruled that "age" under 8 U.S.C. § 1151(f)(2) refers to the petitioner's statutory age as protected by the CSPA. *Teles de Menezes v. Rubio*, No. 24-1253, 2025 WL 2673181, at *1 (1st Cir. Sept. 18, 2025); *Cuthill v. Blinken*, 990 F.3d 272, 278 (2d Cir. 2021); *Tovar v. Sessions*, 882 F.3d 895, 905 (9th Cir. 2018).

66. The term "age" must refer to "statutory age" based on the text, structure, and purpose of the CSPA. *See Cuthill*, 990 F.3d at 278; *see also Teles de Menezes*, 2025 WL 2673181 at *9 (same).

67. As explained by the Second Circuit, § 1151(f)(2) "refers *solely* to F2A beneficiaries, and because Congress specifically provided for a modified age calculation for F2A beneficiaries. . . the best textual reading of 'the age of the [F2A beneficiary] on the date of the parent's naturalization' is that it refers to the F2A beneficiary's statutory age on such date." *Id.* at 279–80 (emphasis and alterations in original).

68. Second, the structure and statutory scheme supports this reading. The "core structural principles" that "permeate the CSPA and the family-based visa scheme" are that processing time should not count against child beneficiaries' ages, that children of U.S. citizens

receive preference over children of LPRs, and that minor children receive preference over adult children. *Id.* at 281. The court in *Cuthill* explains that reading "age" to refer to biological age contravenes every one of these structural considerations and leads to "absurd results." *Id.*; *see also Teles de Menezes*, 2025 WL 2673181 at *10.

69. Finally, the legislative history and text of the CSPA likewise shows that "age" in § 1151(f)(2) should refer to statutory age. *Cuthill*, 990 F.3d at 284. "It is hard to imagine a piece of legislation that speaks with more unmistakable clarity of purpose than the CSPA." *Id.* In *Cuthill*, the court reasoned that "the legislative history and purpose of the CSPA overwhelmingly support the incorporation of the age-reduction formula into 1151(f)(2)." *Id.* at 285.

70. The courts in in *Teles de Menezes, Cuthill*, and *Tovar* held that the statute at issue was unambiguous, and so no deference was owed to the BIA's contrary interpretation of the word "age" in *Matter of Zamora-Molina,* 25 I&N Dec. 606, 611 (BIA 2011). *Id.* at 285-86; *Tovar*, 882 F.3d at 900; *Teles de Menezes*, 2025 WL 2673181 at *9. The Third Circuit has never interpreted, much less given deference to, *Matter of Zamora-Molina.* Even if it were a reasonable interpretation or an ambiguous statute, which it is not, the BIA's decision is not owed deference by this Court. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) ("The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA.").

## COUNT TWO

### Administrative Procedure Act: Impermissible Rulemaking

71. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

72. The Defendants' interpretation of the term "age" in contravention of the CSPA and the APA constitutes a substantive agency rule that is within the meaning of 5 U.S.C. § 551(4) but

that has been implemented without the provision of a notice-and-comment period required under 5 U.S.C. § 553, thereby rendering such substantive agency rule invalid and prejudicial to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Konjit Fantaye respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Issue a Declaratory Judgment that Beneficiary's "age" under § 1151(f)(2) is the CSPA "statutory age";

C. Order the Defendants to instruct the agencies to classify the Plaintiff's application on the Beneficiary's behalf as an application in the immediate relative category throughout the visa application process;

D. Award Plaintiff attorneys' fees and costs pursuant to 28 U.S.C. § 2412 and any other applicable statutory, common law, or Constitutional provision; and

E. Grant Plaintiff any other relief that this Court deems just and proper at law and in equity.

Dated: October 21, 2025

Respectfully submitted,

s/ Jonah Eaton
Jonah Eaton, Esq. (PA ID 311559)
Nationalities Service Center
1216 Arch Street, Flr. 4
Philadelphia, PA 19107
jeaton@nscphila.org
(215) 609-1527
*Pro Bono Counsel for Konjit Fantaye*